**FIRST DIVISION
PHIPPS, C. J.,
ELLINGTON, P. J., and MCMILLIAN, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**October 24, 2014**

# In the Court of Appeals of Georgia

A14A1043. STRAUSS v. CITY OF LILBURN.

MCMILLIAN, Judge.

Carole M. Strauss appeals the summary judgment granted to the City of Lilburn in this "trip and fall" action, asserting that genuine issues of material fact exist with respect to her knowledge of the specific hazard causing her fall. For the reasons set forth below, we agree and reverse the trial court's grant of summary judgment.

Summary judgment is appropriate when no genuine issues of material fact remain and the moving party is entitled to judgment as a matter of law. We review the grant of summary judgment de novo, construing the evidence and all reasonable inferences in favor of the nonmoving party. E.g., *McLemore v. Genuine Parts Co.*, 313 Ga. App. 641 (722 SE2d 366) (2012). So viewed, the record shows that on June 1, 2010, Strauss drove to downtown Lilburn (the "City") with two visiting relatives

to eat lunch at the Blue Rooster Café (the "Café"). At the time, the Café was located along a sidewalk owned by the City at 107 Main Street. In 2007, the City contracted with a third party to renovate the sidewalk area on Main Street.[1] Following the renovation, the upper area of the sidewalk, closest to the Café, was separated from the lower area towards the street, but was connected by a single-step riser; brick columns flanked the riser. Both the upper and lower areas of the sidewalk are constructed of the same, light-colored concrete.

Although Strauss had previously been to the Café, she testified that she usually parked in a lot beside the Café and reached the sidewalk through that parking lot.[2] However, on this occasion, she parked on the street across from the Café. She and her companions then crossed the street and approached the single-step riser connecting the lower sidewalk to the upper sidewalk where the Café's entrance was located. However, they could not proceed that way because there were people blocking that portion of the sidewalk. Instead, they went around to the right and entered the upper sidewalk area from the end near the parking lot.

---

[1] That developer is not a party to this litigation.

[2] At that location, there is no step, but rather a small, sloping handicap ramp that leads to the sidewalk.

After finishing their lunch at approximately 2:00 p.m., they left the Café, and Strauss made her way toward the single-step riser to cross the street to return to her car. Strauss explained at her deposition,

> I knew I was coming up to the steps, so I paid attention. I just didn't see the step there. . . . The next thing, I just sort of – I was going – I just shot out like that, and my head was going towards the car that was parked there, and I thought I was going to hit the car head-on. And then I just splatted on the sidewalk.

Strauss conceded that there was nothing slick or anything else that caused her to trip, and the weather was sunny and bright that day. Strauss could not remember if she had ever walked down that step on her previous visits, but maintained that "historically" she "tried to park in that parking lot . . . [o]n the side." As a result of her fall, Strauss sustained significant injuries to her right shoulder, and she subsequently filed this action against the City.

Jeffrey Gross, an expert witness retained by Strauss, testified by deposition that the single-step riser where Strauss fell is a "camouflaged hazard" due to the fact that there is no delineation of the step. Thus, according to Gross, the change in elevation at the step "is not readily apparent, especially when viewed in descent." Gross further opined that the step should have been properly delineated with nosing or other visual

3

cues such as signage or handrails in order to alert pedestrians to the change in elevation. Gross also testified that single steps such as the one at issue in this case are a "well-known, well-documented hazard." The owner of the Café, who contacted 911 following Strauss's fall, likewise testified at her deposition that the step is "invisible" on sunny days, so much so that it appears "continuous" or like "one flat surface" when walking down towards the street.

After extensive discovery, the City moved for summary judgment. The trial court found that under the undisputed material facts, "Plaintiff had equal knowledge of the static condition which she contends was a hazard," and thus granted summary judgment to the City. This appeal followed.

1. In her sole enumeration of error, Strauss argues that the trial court erred in granting summary judgment in favor of the City because genuine issues of material fact exist with respect to whether the City had superior knowledge of the hazard that caused her fall. We agree.

> As a general rule, owners or occupiers of land are not insurers of the safety of invitees. In a premises liability case, such as this one, the mere fact that [Strauss] fell, without more, does not give rise to liability on the part of [the City]. The true basis of the proprietor's liability for an injury to its invitee is the proprietor's superior knowledge of a condition that may expose the invitees to an unreasonable risk of harm.

4

Recovery is allowed only when the proprietor had knowledge and the invitee did not.

(Citations, punctuation, and emphasis omitted.) *Orff v. Stonewood Restaurant Group, LLC*, 285 Ga. App. 488, 489 (646 SE2d 702) (2007).

And, to survive a motion for summary judgment in a "trip and fall" case, the plaintiff must come forward with evidence that, viewed in the most favorable light for the plaintiff, would enable a rational trier of fact to find that the defendant had actual or constructive knowledge of the hazard. Only then does the burden of production shift to the defendant to produce evidence that the plaintiff's injury was caused by his or her own negligence. And finally, should the defendant succeed in doing so, the burden shifts back to the plaintiff to come forward with evidence that creates a genuine issue of material fact on the question of negligence by the plaintiff or that tends to show that any such negligence resulted from the defendant's own actions or conditions under the defendant's control. See *American Multi-Cinema, Inc. v. Brown*, 285 Ga. 442, 444-445 (2009); *Robinson v. Kroger Co.*, 268 Ga. 735, 746-749 (493 SE2d 403) (1997).

Thus, we turn first to whether Strauss has shown that the City had actual or constructive knowledge of the hazard. An owner has a duty to exercise ordinary care

5

in inspecting the premises to discover possible dangerous conditions of which the owner does not have actual knowledge and must take reasonable precautions to protect invitees from dangers foreseeable from the arrangement or use of the premises. See *Cocklin v. JC Penney Corp.*, 296 Ga. App. 179, 182-183 (674 SE2d 48) (2009). And, in cases such as this, where the plaintiff alleges that a static condition caused her to fall, the landowner's notice of the hazard is presumed.[3] Id. at 182. See also *Barton v. City of Rome*, 271 Ga. App. 858, 861 (610 SE2d 566) (2005). Indeed, there is no dispute that the City was aware of the single-step riser and the conditions under which it existed.

The City argues, nonetheless, that it did not have knowledge of the hazard because it had no knowledge or record of any other falls related to the step.[4] "In other words, [the City] claims that while it knew the [step] was there, it did not know the [step] was a *hazard*." *Brown*, 285 Ga. at 446 (emphasis in original). Like the Supreme Court in *Brown*, we are not persuaded. Strauss has produced evidence that single-step

---

[3] "A static condition is one that does not change and is dangerous only if someone fails to see it and walks into it." (Citations and punctuation omitted.) *Bullard v. Marriott International, Inc.*, 293 Ga. App. 679, 681 (2) (667 SE2d 909) (2008).

[4] While there is evidence that one person tripped while walking *up* the step in 2009, it is undisputed that she did not report the incident to the City.

risers that are the same color on both elevations and are not otherwise marked are a well-known hazard. "The decision whether to recognize [Strauss's] theory of recovery as valid under Georgia premises liability law is precisely the type of legal policy judgment [the Court] instructed in *Robinson* must be left to a jury to decide in light of all the attendant circumstances." Id. ("Given [plaintiff's] evidence of the risk posed by this particular . . . sign . . . , we cannot say, as a matter of law, that [defendant] fulfilled its legal duty to avoid creating an unreasonable risk of foreseeable harm to the public.").

In attempting to shift the burden back to Strauss, the City also argues that she had actual knowledge of the hazard because she admits that she knew there was a step in the area. However, although the single-step riser is a static condition, there is no evidence that Strauss had actually walked either up or down the single-step riser before her fall. The cases relied upon by the City are readily distinguishable; nearly all involve instances in which the plaintiff had previously traversed the same specific hazard under the same circumstances and/or admitted that she was not paying attention at the time of the fall. See, e.g., *LeCroy v. Bragg*, 319 Ga. App. 884 (739 SE2d 1) (2013); *Orff*, 285 Ga. App. at 488; *Echols v. Whisker's Food & Spirits, Inc.*, 229 Ga. App. 240 (493 SE2d 722) (1997) (physical precedent only).

7

Moreover, "the rule imputing knowledge of a danger to a person who has successfully negotiated an alleged dangerous condition before applies only to cases involving a static condition that is *readily discernible* to a person exercising reasonable care for his own safety." (Citation and punctuation omitted; emphasis supplied.) *Perkins v. The Val D'Aosta Co.*, 305 Ga. App. 126, 128-129 (699 SE2d 380) (2010) (finding a question of fact remained where plaintiffs presented evidence that the step down from the curb was difficult to see when approached from above due to lighting conditions, darkened surfaces and lack of warning). Here, the evidence shows that, although Strauss was paying attention to where she was walking, she was unable to see the step down because the change in elevation was essentially camouflaged from her vantage point, which was supported by the testimony of both Gross and the Café's owner. Thus, whether Strauss exercised ordinary care for her own safety and whether she had greater or equal knowledge of the specific hazard posed by the single-step riser are questions of fact to be resolved at trial. See *Pinder v. H & H Food Services, LLC*, 326 Ga. App. 493, 502 (2) & n. 9 (756 SE2d 721) (2014) (physical precedent only) (citing cases in which summary judgment improper where evidence supported that static condition was camouflaged or not readily discernible by plaintiff); *Cocklin*, 296 Ga. App. at 182 (material issue of fact as to

whether the specific hazard precipitating plaintiff's fall was readily observable to her in the exercise of ordinary care); *Jackson v. Waffle House, Inc.*, 245 Ga. App. 371, 375 (2) (537 SE2d 188) (2000) (question of fact remained where plaintiff had never traversed that specific area of the parking lot before). Accordingly, the trial court's grant of summary judgment to the City must be reversed.

*Judgment reversed. Phipps, C. J., and Ellington, P. J., concur.*