**FIFTH DIVISION
MCFADDEN, P. J.,
GOBEIL and LAND, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

**February 16, 2023**

# In the Court of Appeals of Georgia

A22A1499. BRIXMOR NEW CHASTAIN CORNERS SC, LLC v. JAMES.

MCFADDEN, Presiding Judge.

Brixmor New Chastain Corners SC, LLC, the owner of a shopping center, appeals the denial of its motion for summary judgment in Arlene James's premises liability action. Brixmor argues that it is entitled to summary judgment because, as a matter of law, the structure that tripped James was not a hazard and because James already had traversed it. We hold that whether that structure is a hazard and whether James had constructive knowledge of the alleged hazard from traversing it before are jury questions. Brixmor also argues that the trial court erred by imposing a spoliation sanction. We hold that the trial court applied an incorrect legal standard. So we affirm

the denial of Brixmor's motion for summary judgment but we vacate the trial court's spoliation ruling and remand for proceedings consistent with this opinion.

1. *Summary judgment evidence.*

We review the denial of a motion for summary judgment de novo, viewing the evidence, and making all reasonable inferences, in the light most favorable to the nonmovant. *Cowart v. Widener*, 287 Ga. 622, 624 (1) (a) (697 SE2d 779) (2010).

So viewed, the record shows that on the evening of January 12, 2020, while it was dark outside, James and her husband went to Brewster's Neighborhood Grill to watch a football game with friends. Brewster's is located in a shopping center owned by Brixmor. James and her husband parked in a space in the parking lot, walked to Brewster's, and watched the game. They left Brewster's at half time.

As James was walking to their car, she tripped on a concrete barrier that separated their parking space from an area designated for motorcycle parking. James was injured in the fall. The barrier consisted of three concrete parking bumpers or wheel stops laid end to end to separate the parking space from the motorcycle parking area. The parking bumpers were adjacent to the parking space, not across the front of the parking space as is usual with parking bumpers. They were light in color, either

2

white or the color of natural concrete, and rested on the painted white line of the parking space.

Prior to James's fall, the parking bumpers had been painted red and yellow. About a month before James's fall, however, asphalt work was performed on the parking lot. At the completion of the project, new parking bumpers were installed but they were not painted the contrasting yellow and red colors and instead were left their natural color.

Five days after James's fall, Brixmor had the parking bumpers painted yellow at the request of the owner of Brewster's. Brixmor conceded that it is easier to see parking bumpers painted yellow than parking bumpers left in their natural, light color.

2. *Summary judgment.*

Brixmor argues that it is entitled to summary judgment because wheel stops and parking bumpers are not hazards as a matter of law and because James already had traversed the parking bumpers before she fell. We disagree.

(a) *Wheel stops and parking bumpers may constitute hazards.*

"[T]he threshold point of our inquiry in a [trip]-and-fall case is the existence of a hazardous condition on the premises." *Bryan Bank & Trust v. Steele*, 326 Ga. App. 13, 14 (1) (755 SE2d 828) (2014) (citation and punctuation omitted). Brixmor

3

argues that invitees must always anticipate wheel stops and parking bumpers in parking lots, so that in most cases, as a matter of law, such structures may not be considered to be a hazard.

To support its position, Brixmor relies on *Bartenfield v. Chick-fil-A*, 346 Ga. App. 759, 766 (2) (815 SE2d 273) (2018), where we held that "wheel stops and similar static structures are common features of parking lots that should be anticipated by invitees and do not generally constitute hazards." But we observed that "evidence of a failure to distinguish [a parking lot structure] by color could demonstrate a hazardous condition," although in that case, unlike in James's case, "the wheel stop's natural cement color *contrasted* with the surrounding black asphalt." Id. at 767 (2) (a) (punctuation omitted; emphasis supplied). So, in *Bartenfield*, we recognized that the common use of wheel stops and parking bumpers in parking lots is an important consideration in the calculus, but such common use is not completely determinative of whether a hazardous condition exists.

The other cases cited by Brixmor are distinguishable. In *Ridley v. Dolgencorp, Inc.*, 353 Ga. App. 561, 564 (839 SE2d 26) (2020), the plaintiff who tripped in a parking lot on an unpainted concrete parking abutment "admitted that the parking abutments were plainly visible from a good distance away." James, on the other hand,

made no such admission and testified that she did not see the parking bumpers, either when she exited her car to walk to Brewster's or when she tripped on them. In *Pirkle v. Robson Crossing*, 272 Ga. App. 259, 261 (612 SE2d 83) (2005), there was no evidence that "there were lighting or other issues that made [the alleged hazardous condition] difficult to see." There is such evidence here. And *Norwich v. Shrimp Factory*, 332 Ga. App. 159 (770 SE2d 357) (2015), did not involve an allegedly hazardous structure in a parking lot.

Several of the cases Brixmor cites predate *Robinson v. Kroger Co.*, 268 Ga. 735, 748-749 (2) (b) (493 SE2d 403) (1997). "In light of *Robinson's* significantly lightening the plaintiff's load in proving a trip and fall case, and its reminder that most routine issues in such cases are not subject to summary adjudication, pre-*Robinson* cases . . . must be carefully scrutinized." *Hamilton v. Kentucky Fried Chicken of Valdosta*, 248 Ga. App. 245, 247 (1) (545 SE2d 375) (2001) (citations omitted).

In *Robinson*, our Supreme Court took issue with the principle that a plaintiff may not recover in a trip and fall case if the "hazard which was not seen by the [plaintiff] before the fall . . . could have been seen by the [plaintiff] had the [plaintiff] looked . . . ." *Robinson*, 268 Ga. at 742. The court "disapprove[d] of the appellate

5

decisions which hold as a matter of law that an invitee's failure to see before falling the hazard which caused the invitee to fall constitutes a failure to exercise ordinary care." *Robinson*, 268 Ga. at 743 (1).

One of the pre-*Robinson* cases Brixmor cites, *McMullan v. Kroger Co.*, 84 Ga. App. 195 (65 SE2d 420) (1951), relies on this disapproved principle. In *McMullan*, 84 Ga. App. at 195, we held that a concrete bar in a parking lot, upon which the plaintiff tripped when walking to his car, was not a hazard because it easily could have been seen had the plaintiff been exercising ordinary care to watch where he was walking and had he not obstructed his vision by holding bags of groceries. Id. at 198-199.

In *McHugh v. Trust Co.*, 102 Ga. App. 412 (116 SE2d 512) (1960), we simply relied on *McMullan* to hold that a defendant's "maintenance of [a cement separator in a paved parking lot] does not constitute negligence." Id. at 413. In *Carmichael v. Timothy*, 104 Ga. App. 16, 18 (1) (120 SE2d 814) (1961), we simply relied on *McHugh* and *McMullan* as well as another pre-*Robinson* case, *Ely v. Barbizon Towers*, 101 Ga. App. 872 (115 SE2d 616) (1960), to hold that "[s]ince it has been held that the existence of dividers in parking lots is not negligence in daylight, it would be ridiculous to hold it to be negligence to have them present at night."

6

We note that *McMullan*, *McHugh*, and *Carmichael* have only been cited in one post-*Robinson* opinion, *Bartenfield*, supra, 346 Ga. App. at 759. These cases are of dubious value after *Robinson*, and we do not think that they can stand for a rule that, as a matter of law, static structures in parking lots are not hazards.

In the current case, viewing the evidence in James's favor, the record shows that the placement of the parking bumpers adjacent to the parking space, instead of at its front, was unusual and that the bumpers were not distinguished by color from the white parking stripe on which they rested. "We find this evidence sufficient to create a jury issue as to whether the parking bumper[s] created a hazard." *Pinder v. H & H Food Svcs.*, 326 Ga. App. 493, 499 (1) (756 SE2d 721) (2014) (physical precedent only). See also *Freyer v. Silver*, 234 Ga. App. 243 (507 SE2d 7) (1998) (post-*Robinson* case in which we held that whether plaintiff should have seen the hazardous condition, a catch basin in a parking lot, was a jury question).

(b) *Prior traversal rule*.

Brixmor argues that the prior traversal rule entitles it to summary judgment. It does not.

"Georgia's longstanding prior traversal rule provides that when a person has successfully negotiated an alleged dangerous condition on a previous occasion, that

7

person is presumed to have equal knowledge of it and cannot recover for a subsequent injury resulting therefrom." *Gervin v. The Retail Property Trust*, 354 Ga. App. 11, 13 (1) (840 SE2d 101) (2020) (citations and punctuation omitted).

> The rule is not without limit, however. The rule
>
> applies only to cases involving a static condition that is readily discernible to a person exercising reasonable care for his own safety. Moreover, . . . it is the plaintiff's knowledge of the specific hazard precipitating a trip and fall which is determinative, not merely her knowledge of the generally prevailing hazardous conditions or of hazardous conditions which plaintiff observes and avoids.

*Cocklin v. JC Penney Corp.*, 296 Ga. App. 179, 182 (674 SE2d 48) (2009) (citations and punctuation omitted).

Viewing the evidence in the light most favorable to James, we cannot conclude as a matter of law that she had knowledge equal to or superior than Brixmor's knowledge of the parking bumpers. For one thing, the evidence of whether James successfully navigated the specific hazard is not undisputed. Viewed in James's favor, her testimony was simply that she had previously walked within close proximity of the parking bumpers when she walked to Brewster's, she did not notice the parking bumpers then, and she was not certain that she took the same route when

8

she returned to the car. For another thing, the placement of the parking bumpers adjacent to the parking space, instead of at its end, was unusual and the bumpers were not distinguished by color from the white parking stripe on which they rested, making them harder to see than they would have been had they been painted a contrasting color.

> [A] reasonable juror would be entitled to find that [James] did not precisely retrace her exact path, step by step, from earlier in the evening when she returned to her vehicle. Moreover, . . . a reasonable juror also could find that the difficult-to-see [parking bumpers] would not have been visible even if [James's] earlier path of travel had taken her right next to [them].

*John v. Battle Station*, 365 Ga. App. 165, 169 (2) (877 SE2d 702) (2022). The trial court did not err in denying Brixmor's motion for summary judgment.

3. *Spoliation.*

Brixmor enumerates as error the trial court's spoliation ruling. The trial court ruled that Brixmor spoliated evidence by painting the parking bumpers yellow five days after James's fall and that, as a sanction, Brixmor would be barred from introducing evidence or argument that the parking bumpers were not a potential hazard. Although we reject Brixmor's other challenges to the spoliation ruling, we

9

agree with Brixmor that the trial court applied an incorrect legal standard, so we vacate the court's spoliation ruling.

"[A] trial court has wide discretion in adjudicating spoliation issues, and such discretion will not be disturbed absent abuse." *Phillips v. Harmon*, 297 Ga. 386, 397 (II) (774 SE2d 596) (2015). Three of Brixmor's arguments do not show an abuse of discretion.

Brixmor argues that the parking bumpers were not destroyed, but only painted, so they were not spoliated. "Spoliation refers to the destruction, failure to preserve, *or material alteration* of evidence that is relevant to contemplated or pending litigation." *Cooper Tire & Rubber Co. v. Koch*, 339 Ga. App. 357, 359 (793 SE2d 564) (2016) (citations and punctuation omitted; emphasis supplied). The trial court did not abuse her discretion by implicitly finding that Brixmor materially altered the parking bumpers by painting them yellow.

Brixmor argues that the trial court erred by failing to apply the subsequent remedial measure rule to its analysis. That rule, found at OCGA § 24-4-407, generally prohibits the admission in civil proceedings of evidence of remedial measures taken to make an injury or harm less likely to recur. Brixmor cites no authority — and we have found none — to support its argument that the trial court was required to

10

consider the doctrine of subsequent remedial measures, a specific evidentiary exclusionary rule, when ruling on spoliation. So it has not shown an abuse of discretion in this regard.

Brixmor argues that the trial court erred by relying on unsworn statements from James's witnesses, but it fails to specify any such statements. And although in its order, the trial court referred to a building code violation — which, perhaps, is the reference about which Brixmor complains — that reference concerned the denial of summary judgment, not spoliation. Brixmor has not shown an abuse of discretion.

But we agree with Brixmor's argument that the trial court did not apply the correct legal analysis. Brixmor had a duty to preserve evidence only if it knew or reasonably should have foreseen that James was contemplating litigation. See *Phillips v. Harmon*, 297 Ga. at 396-397 (II). The trial court misstated the duty, finding that it is triggered "where a party is instructed to preserve evidence and fails to do so, and also when a party fails to preserve evidence after contemplating litigation." It is true that a *plaintiff's* duty to preserve evidence "arises when that party contemplates litigation, inasmuch as litigation is obviously for[es]eeable to the plaintiff at that point." Id. at 396 (II). But "the duty to preserve relevant evidence must be viewed from the perspective of the party with control of the evidence" id., and a defendant's

11

"duty arises when it knows or reasonably should know that the injured party, the plaintiff, is in fact contemplating litigation. . . ." Id.

There is no indication that the trial court considered whether Brixmor knew or reasonably should have known that James was contemplating litigation when Brixmor had the parking bumpers painted yellow five days after James's fall. We note that "the simple fact that someone is injured in an accident, without more, is not notice that the injured party is contemplating litigation sufficient to automatically trigger the rules of spoliation." *Kitchens v. Brusman*, 303 Ga. App. 703, 707 (1) (a) (694 SE2d 667) (2010).

"Although we recognize the broad range of conclusions a trial court may reach in the exercise of its discretion, it abuses that discretion when it applies an incorrect legal standard." *State v. Anderson*, 365 Ga. App. 75, 75-76 (877 SE2d 639) (2022). Accord *Sayers v. Artistic Kitchen Design*, 280 Ga. App. 223, 227 (2) (633 SE2d 619) (2006). We cannot say that the trial court applied the correct legal standard. So we vacate the trial court's finding of spoliation and remand the case for further proceedings consistent with this opinion. *Reid v. Waste Indus. USA*, 345 Ga. App. 236, 245-246 (6) (812 SE2d 582) (2018) (vacating and remanding spoliation order because trial court did not properly consider factors for determining whether

12

defendant had constructive notice that plaintiff contemplated litigation). Cf. *Phillips*, 297 Ga. at 397 (II) (listing factors a trial court may consider in determining whether a defendant had constructive notice that the plaintiff contemplated litigation).

*Judgment affirmed in part and vacated in part and case remanded with direction. Gobeil and Land, JJ., concur.*